IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JEAN C. LITTLE,<br><br>     Plaintiff,<br><br>v.<br><br>NEW PRIME, INC.,<br><br>     Defendant. | CIVIL ACTION FILE<br><br>NO. 4:19-cv-15-TCB |

# **O R D E R**

This case comes before the Court on Defendant New Prime, Inc.'s motion [61] for summary judgment.

## I.    Background

Just before 7:00 p.m. on December 7, 2017, Jean C. Little was driving along Interstate 75 in Bartow County when her car engine stuttered. She immediately pulled over onto the shoulder of the interstate and, after briefly searching for her cell phone, decided to walk

northbound to get help. By that time of the evening, it was dark and there was no roadway lighting in the area.

Meanwhile, non-party Gary Warner was driving a tractor trailer for New Prime in the right-hand lane of I-75, moving at an approximate speed of sixty-five miles per hour (less than the posted speed limit of seventy miles per hour).

Warner initially noticed Little's vehicle along the interstate. After a curve in the road, he glimpsed Little on the shoulder of the interstate, approximately one-half mile beyond her car. She was walking along the fog line of the interstate's right-hand lane.

Warner aggressively braked when he saw Little and slowed from sixty-five miles per hour to approximately thirty miles per hour. However, he did not honk his horn and remained in the right-hand lane.

As Warner drew closer, Little stepped into the right-hand lane. Despite having braked, Warner was unable to stop and his tractor trailer collided with her. She survived, but with severe injuries.

Trooper Andrew Miller arrived at the scene shortly thereafter. Warner's tractor-trailer was still in the right lane of the interstate where the collision occurred. He found no evidence that Warner was fatigued, distracted, or impaired in any way. He ultimately concluded that Little had caused the accident by stepping into the roadway and that Warner was not at fault.

On January 23, 2019, Little filed this suit. She brings one claim of vicarious liability against New Prime based on Warner's alleged negligence. The parties engaged in discovery, and on October 23, 2020, New Prime filed its motion for summary judgment.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this

determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go

beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

### III.  Discussion

Under Georgia law, the common law elements of negligence are:

> (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Moore v. Camara*, 732 S.E.2d 319, 321 (Ga. Ct. App. 2012) (quoting *Berry v. Hamilton*, 541 S.E.2d 428, 429–30 (Ga. Ct. App. 2000)).

New Prime does not dispute that its driver owed a duty of ordinary care to Little pursuant to O.C.G.A. § 40-6-93, which provides that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, shall give warning by sounding his horn when necessary, and shall exercise proper precautions upon

5

observing any child or any obviously confused, incapacitated, or intoxicated person." However, it argues that there is insufficient evidence of breach of that duty and causation such that it cannot be held vicariously liable for negligence.

The burden is on Little to point to evidence of Warner's negligence. *See Hunsucker v. Belford*, 695 S.E.2d 405, 408 (Ga. Ct. App. 2010) ("Negligence is not to be presumed, but is a matter for affirmative proof." (quoting *Purvis v. Steve*, 643 S.E.2d 380, 383 (Ga. Ct. App. 2007))). "The mere fact that an accident happened and a plaintiff was injured affords no basis for recovery . . . ." *Moore*, 732 S.E.2d at 321 (quoting *Berry*, 541 S.E.2d at 430). Instead, the plaintiff must "show[] that the accident was caused by specific acts of negligence of the defendant." *Id.* (quoting *Berry*, 541 S.E.2d at 430).

As evidence of Warner's alleged negligence, Little points out that he "failed to retake the middle lane, failed to take precautions to preclude the hazard becoming an emergency, failed to honk his horn, and failed to make any evasive maneuver whatsoever . . . other than emergency braking that was too little too late." [65] at 2.

6

Little's primary argument is that Warner negligently continued to transition from the center lane to the right lane after he spotted her vehicle. As evidence of such, she points to expert testimony that the truck ended up with one wheel in the middle lane after the collision. *See* [72] at 86:2–3. And she contends that there is video footage of Warner just after the accident in which he admits to moving into the right lane after he saw her vehicle. *See* [71] at 46:6–10.

But in the video footage referenced by Little,[1] Warner merely admits that he "was in the middle lane and moved to the right"; he does not expound upon the timing for his lane change. *Id.* Later in the video, he clarifies that "after he was in the right lane is whenever he saw" the car. [71] at 46:23–47:2. He also testified that he was in the right lane

---

[1] New Prime argues in part that Trooper Miller's testimony regarding Warner's statements is inadmissible hearsay that cannot be considered at the summary judgment stage.

Whether inadmissible evidence may be considered on summary judgment is the subject of considerable debate among circuit courts. *See Joseph v. Lincare, Inc.*, 989 F.3d 147, 155 (1st Cir. 2021). Because the Eleventh Circuit has generally held that a district court may consider hearsay on a motion for summary judgment "if the statement could be reduced to admissible evidence at trial or reduced to admissible form," the Court considers it here. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999)).

when he saw the vehicle, [69] at 24:3–5, and subsequently submitted an affidavit that he was "fully established within the right lane" when he saw Little's car. [77-1] ¶ 6. Warner's passenger, another truck driver named Tony Hawkins, confirmed as much. *See* [70] at 79:18–22.

With respect to the expert testimony offered by Little regarding the truck's positioning, expert Bob Awtrey testifies that the truck ended up with one wheel in the middle lane after the collision. Little argues that this is evidence that Warner had not completed his lane change at the time of the collision. However, Autrey admits that he does not know how much time passed after Warner's lane change and before the collision. [72] at 83:15–18. And he acknowledges that the position he references was of the tractor trailer *after* the accident; it is not the position of the tractor trailer as it came into contact with her.

Having carefully reviewed the record evidence and the parties' briefs, the Court concludes that the evidence, when viewed in the light most favorable to Little, is insufficient to authorize an inference that Warner was negligent, especially given the undisputed testimony of both Warner and Hawkins as to the lane change. Little can establish

only "a conjecture or possibility" of negligence; this is insufficient to defeat summary judgment. *Moore*, 732 S.E.2d at 321 ("A finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." (quoting *Werner Enters., Inc. v. Lambdin*, 706 S.E.2d 185, 186–87 (Ga. Ct. App. 2011))).

Little also argues that Warner acted negligently by failing to make an evasive maneuver other than braking. As evidence that he could have done more to evade the collision—like swerving into another lane—she points to testimony that traffic was "light" that day, *see* [70] at 80: 1–2, and notes that Warner did not honk his horn or otherwise warn her that he was approaching.

However, this does not create a question of fact as to whether Warner breached his duty to exercise due care. Hawkins testified that Little's car was sitting just off the side of the highway, in the dark, without hazard lights on. It is undisputed that upon seeing the car, Warner slowed down from his initial speed of sixty-five miles per hour to approximately thirty miles per hour and checked his mirrors to see

9

whether he could move over. He later "initiated a hard-braking event." [66] ¶ 25.

And although Warner saw Little from approximately one-half mile away, he testified that she was on the shoulder—not in the road—and that he tried to move over but was prevented by traffic from doing so. *See* [69] at 26:17–23. According to Hawkins (and Little presents no evidence to the contrary), Little "waited until we got close enough and stepped – just stepped right out in front of" his tractor trailer. [70] at 58:4–5. At that point, Warner testified, he could not do anything "other than brak[e]." [69] at 35:10.

Based on the foregoing, Little has not pointed to a specific, negligent act or omission by Warner that proximately caused her injuries. He was not inebriated or tired, he braked upon seeing Little's car, and he checked to see whether he could change lanes in traffic. A jury could only speculate as to whether he should have done more to evade a collision, and "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." *Kelly v. Fann*, 807 S.E.2d

98, 100–01 (Ga. Ct. App. 2017) (alterations in original) (quoting *McKissick v. Giroux*, 612 S.E.2d 827, 829 (Ga. Ct. App. 2005)). Accordingly, summary judgment will be granted. *See Hunsucker v. Belford*, 695 S.E.2d 405, 408 (Ga. Ct. App. 2010) (reversing denial of summary judgment where there was no evidence that defendant driver was inattentive or unsafely navigating the roadway, he was not speeding, and he could not avoid a pedestrian who stepped into the roadway).

### IV. Conclusion

For the foregoing reasons, New Prime's motion [61] for summary judgment is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 21st day of June, 2021.

_____
Timothy C. Batten, Sr.
Chief United States District Judge